UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
:
KSW MECHANICAL SERVICES, INC.,       :    11 Civ. 5100 (WHP)
:
         Plaintiff,                :    MEMORANDUM & ORDER
:
    -against-                           :
:
MECHANICAL CONTRACTORS               :
ASSOCIATION OF NEW YORK, INC.,       :
et al.,
:
         Defendants.
:
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/12

WILLIAM H. PAULEY III, District Judge:

        Plaintiff KSW Mechanical Services, Inc. ("KSW"), on behalf of a putative class, alleges that Defendants—the Mechanical Contractors Association of New York, Inc. (the "Association") and its board members—violated the Sherman Act and New York law by conspiring with a union ("Local 638") to obtain a more favorable work rule for Association members than for non-members (the "Independents"). The parties move for summary judgment. For the following reasons, KSW's motion for summary judgment is denied in its entirety. Defendants' motion for summary judgment is granted in part and denied in part.

BACKGROUND

I.    Industry Structure

        KSW furnishes and installs heating, ventilating, and air conditioning systems in the New York City metropolitan area. The Association is a non-profit association that promotes

the mechanical and sprinkler contracting industry in New York City and on Long Island. (Defendants' Local Rule 56.1 Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment, filed Jan. 6, 2012 ("Def. Stmt.") ¶ 1; Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts in Opposition to Defendants' Motion for Summary Judgment, filed Feb. 1, 2012 ("Pl. Stmt.") ¶1.) Local 638 represents workers who perform a large share of the mechanical contracting work in the New York City area. (Def. Stmt. ¶ 6; Pl. Stmt. ¶ 6.)

The Association negotiates labor contracts with Local 638 on behalf of its members. Independents like KSW are not parties to the agreements that the Association negotiates. (Def. Stmt. ¶¶ 7, 8; Pl. Stmt. ¶¶ 7, 8.) Yet, according to KSW, it has been the industry custom for the Association to negotiate the terms of labor contracts for all employers in the industry, not just Association members. (Pl. Stmt. ¶ 7.) Specifically, the Association and Local 638 typically negotiated an agreement that the union then presented to the Independents in a process known as "pattern bargaining." (Def. Stmt. ¶ 15; Pl. Stmt. ¶¶ 12, 15.) Rather than negotiating separate agreements, Local 638 used its agreement with the Association as a template for its agreement with the Independents. (Def. Stmt. ¶¶ 16, 17; Pl. Stmt. ¶¶ 16, 17.)

II.   The 2011-2014 Agreement

This dispute centers on the appointment of shop stewards. A shop steward acts as a liaison between the workers employed on a job site and Local 638. (Def. Stmt. ¶ 25; Pl. Stmt. ¶ 25.) Shop stewards police job sites to ensure that the contractors are complying with the terms of the employer's agreement with the union. (Def. Stmt. ¶ 26; Pl. Stmt. ¶ 26.) Under the agreements at issue here, a shop steward must be appointed once a certain number of workers is

employed on a given job. The parties dispute whether the threshold at which a shop steward must be appointed is an economic issue that impacts the ability of a mechanical contractor to compete for projects. (Def. Stmt. ¶¶ 51, 52; Pl. Stmt. ¶¶ 51, 52.)

Between April 13 and June 3, 2011, the Association negotiated with Local 638 for a new agreement covering the period from July 1, 2011 through June 30, 2014. (Def. Stmt. ¶¶ 31; Pl. Stmt. ¶ 31.) During the negotiations, Local 638 proposed lowering the threshold at which a shop steward would be appointed, thereby increasing the likelihood that a shop steward would be assigned on a given job. (Def. Stmt. ¶¶ 34, 35; Pl. Stmt. ¶¶ 34, 35.)

Responding to the union's request for more shop stewards, the Association presented a counterproposal in which its members would be held to a less onerous requirement than would Independents like KSW. Specifically, the Association proposed that, for Association members in good standing, a shop steward would be selected from among the contractor's employees on jobs with at least eight crewmembers. (Def. Stmt. ¶ 36; Pl. Stmt. ¶ 36.) For Independents, a shop steward would be selected on jobs with at least four crewmembers. (Def. Stmt. ¶ 36; Pl. Stmt. ¶ 36.) Thus, the Association proposed a rule by which Independents like KSW would be required to employ shop stewards on more jobs than Association members.

The Association justifies proposing disparate treatment of Independents by citing its members' history of contract compliance and timely benefit payments. By the Association's estimate, approximately eighty percent of employers who are delinquent on their contributions to their workers' fringe benefits are Independents. (Def. Stmt. ¶ 38.) KSW disputes these claims, and argues that the Association's actual aim was to obtain a competitive advantage for its members over Independents. (Pl. Stmt. ¶ 46.)

Ultimately, Local 638 agreed to the Association's counterproposal. By Memorandum of Agreement dated June 9, 2011, the Association and Local 638 agreed that, for Association members, a shop steward must be appointed on jobs with at least eight crewmembers. (Def. Stmt. ¶ 44; Pl. Stmt. ¶ 44.) After entering into its agreement with the Association, Local 638 sent a letter to its members informing them of the amended shop steward provision. (Def. Stmt. ¶¶ 54, 55; Pl. Stmt. ¶¶ 54, 55.) Local 638's letter also provided that Independents must appoint a shop steward on jobs with at least four crewmembers. (Def. Stmt. ¶ 56; Pl. Stmt. ¶ 56.)

On June 24, 2011, KSW's Chairman and CEO Floyd Warkol requested that Local 638 negotiate a new agreement with KSW, citing the Association's more lenient shop steward requirement. (Def. Stmt. ¶ 57; Pl. Stmt. ¶ 57.) On June 28, 2011, Local 638's representative Richard Roberts responded that the union would not negotiate separately with KSW. (Def. Stmt. ¶ 58; Pl. Stmt. ¶ 58.) Rather, Roberts stated that Local 638 would use the Association agreement as a model for the Independent Agreement and would not negotiate with the approximately 160 Independents. (Def. Stmt. ¶ 60; Pl. Stmt. ¶ 60.) Roberts also questioned Warkol's claim that the disparity in shop steward clauses would harm KSW, as the wages, hours, fringe benefit contributions, and other economic terms in the Association Agreement and the Independent Agreement remained identical. (Def. Stmt. ¶ 61; Pl. Stmt. ¶ 61.)

On August 24, 2011, KSW entered into the Independent Agreement with Local 638 under protest. (Def. Stmt. ¶¶ 66, 67; Pl. Stmt. ¶¶ 66, 67.)

## DISCUSSION

I.  Legal Standard

Summary judgment should be rendered if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita, 475 U.S. at 586-87). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

Where, as here, both parties have moved for summary judgment, each party's motion "must be examined on its own merits, and in each case all reasonable inferences must be

drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

II.     Sherman Act § 1

Section 1 of the Sherman Act prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce[.]" 15 U.S.C. § 1. To prevail on a § 1 claim, a plaintiff must demonstrate (1) an agreement or concerted action among the defendants in the (2) unreasonable restraint of trade. See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc., 996 F.2d 537, 542 (2d Cir. 1993). A group of employers may not conspire with a labor union to eliminate competitors from an industry. See United Mine Workers of Am. v. Pennington, 381 U.S. 657, 665-66 (1965).

A. Pattern Bargaining

While the Association admits that it proposed that the union apply a different shop steward requirement to Independents, it argues that this proposal was lawful. First, the Association contends that its negotiations with Local 638 constituted permissible "pattern bargaining." In typical pattern bargaining, a union reaches an agreement with an employer that sets the pattern for the entire industry. Subsequently, other companies agree to the same provisions as a means of equalizing labor costs. Pattern bargaining results in the same wages, benefits, and working conditions for all employees in an industry. See Seabury Constr. Corp. v. Dist. Council of N.Y. and Vicinity of the United Bhd. of Carpenters, 461 F. Supp. 2d 193, 197 (S.D.N.Y. 2006) (describing pattern bargaining).

Standing alone, pattern bargaining does not violate the Sherman Act. See Pennington, 381 U.S. at 665 n.2 (explaining that evidence of pattern bargaining "is not alone

sufficient evidence to maintain a union-employer conspiracy charge under the Sherman Act"); see also James R. Snyder Co. v. Associated Gen. Contractors of Am., 677 F.2d 1111, 1124-25 (6th Cir. 1982) (holding that a jury could not find an antitrust conspiracy based solely on evidence of pattern bargaining). But the negotiations at issue here did not constitute pattern bargaining for the simple reason that they established no uniform pattern. Rather, Local 638 imposed a more onerous shop steward requirement on the Independents at the Association's suggestion. As a result, Local 638's agreement with the Association did not set the pattern for its agreement with the Independents.

B. The Non-Statutory Exemption

Next, the Association argues that its agreement with Local 638 is sheltered by the "non-statutory exemption" to the antitrust laws because it was a product of collective bargaining. The Supreme Court has long recognized that "in order to accommodate the collective bargaining process, certain concerted activities among and between labor and employers must be held to be beyond the reach of the antitrust laws." Clarett v. Nat'l Football League, 369 F.3d 124, 140 (2d Cir. 2004) (Sotomayor, J.). Accordingly, the Court has developed a non-statutory exemption by which certain restraints "so intimately related to wages, hours and working conditions that the unions' successful attempt to obtain that provision through bona fide, arm's-length bargaining in pursuit of their own labor union policies, and not at the behest of or in combination with nonlabor groups, fall[] within the protection of the national labor policy and [are] therefore exempt from the Sherman Act." Local No. 189, Amalgamated Meat Cutters v. Jewel Tea Co., 381 U.S. 676, 689-90 (1965) (opinion of White, J.); see also Clarett, 369 F.3d at 132 n.12

(recognizing Justice White's language in Jewel Tea as the "classic formulation" of the nonstatutory exemption).

Here, the "nonstatutory exemption" does not shield the Association's conduct. It is undisputed that the Association encouraged Local 638 to impose a stricter shop steward requirement on the Independents than on Association members. And it is well settled the non-statutory exemption does not protect potentially anticompetitive provisions adopted "at the behest of or in combination with nonlabor groups." Jewel Tea, 381 U.S. at 689-90; see also Collins v. Nat'l Basketball Players Ass'n, 850 F. Supp. 1468, 1480 (D. Colo. 1991) (applying non-statutory exemption where "[t]here is no economic benefit to the [employer] as a result of this provision and there is no effect on the employer's product or service market as a result of the provision"). Further, the Independents had no role in shaping the agreement between the Association and Local 638. See Sheet Metal Workers Local Union No. 54 v. E.F. Etie Sheet Metal Co., 1 F.3d 1464, 1475 (5th Cir. 1993) ("The second theme in the nonstatutory exemption cases is that the agreement between the union and an employer [has] some effect on third parties who had no chance to affect the negotiation or implementation of the agreement."). Because Local 638 adopted the challenged agreement at the Association's suggestion, the non-statutory exemption does not apply.

C. Antitrust Standing

Finally, the Association contends that KSW lacks standing to sue under the Sherman Act because it cannot show "antitrust injury," which is an element of antitrust standing. It is axiomatic that "[b]esides demonstrating Article III standing, an antitrust plaintiff must also establish antitrust standing." Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 n.1 (2d Cir.

2008). To establish antitrust standing, a plaintiff must first show that it suffered an "antitrust injury," which is "an 'injury of the type the antitrust laws are intended to prevent and that flows from that which makes defendants' acts unlawful.'" Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc., 467 F.3d 283, 290, 292-93 (2d Cir. 2006) (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)). "Thus, '[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect of the defendant's behavior.'" Paycom, 467 F.3d at 290 (quoting Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344 (1990)).

Ultimately, KSW's antitrust standing turns on whether the stricter shop steward provision increases labor costs and impacts KSW's ability to bid competitively. If the requirement hamstrings KSW's competitiveness, then the Association's agreement with Local 638 not only harms KSW, but also impacts competition in general. If, however, the Association is correct that the Independents' ability to bid competitively is not impacted by the stricter shop steward requirement, then KSW will not be able to prove an "antitrust injury." Paycom, 467 F.3d at 290. While this Court is skeptical that the shop steward provision does not affect labor costs, the record shows that this issue is genuinely disputed. Thus, the impact of the shop steward provision on labor costs and the Independents' ability to bid competitively must be addressed at trial. Accordingly, the motions for summary judgment on KSW's Sherman Act claim are denied.

III.  State Law Claims

KSW advances a potpourri of state law claims based on the theory that the Association assumed contractual and fiduciary obligations by negotiating on behalf of the Independents.

A. Implied Contract Claims

"Under New York law '[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct[.]'" Leibowitz v. Cornell Univ., 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting Jemzura v. Jemzura, 36 N.Y.2d 496, 503-04 (1975)). Like any contract, a contract implied in fact "requires such elements as consideration, mutual assent, legal capacity and legal subject matter." Leibowitz, 584 F.3d at 507 (quoting Maas v. Cornell Univ., 94 N.Y.2d 87, 93-94 (1999)) (internal quotation marks omitted).

Here, KSW proffers no evidence showing that the Independents furnished any consideration to the Association for negotiating on their behalf. While the Association may have obtained superior bargaining power as a consequence of its privileged negotiating role, there is no evidence that this power was "something of value" that the Association received from the Independents in exchange for its promise to negotiate for them. See Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 374 (2d Cir. 2000). In the absence of consideration, there was no implied contract—or any other contract—between the Independents and the Association. See Leibowitz, 584 F.3d at 507. Accordingly, Defendants are entitled to summary judgment

dismissing KSW's claims for breach of the implied covenant of good faith and fair dealing and tortious interference with contract.

B. <u>Unjust Enrichment</u>

"To recover on a theory of unjust enrichment under New York law, a party must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that the circumstances dictate that, in equity and good conscience, the defendant should be required to turn over its money to the plaintiff." <u>Universal City Studios, Inc. v. Nintendo Co.</u>, 797 F.2d 70, 79 (2d Cir. 1986). The record here—viewed in KSW's favor—reflects that the Association secured a more favorable shop steward provision from Local 638 at the Independents' expense. Specifically, a reasonable jury could conclude that the brunt of the new shop steward requirement fell on the Independents—and not the Association—based on the Association's suggestion to the union, and that the Association's members benefitted as a result. These factual questions must be resolved at trial. Accordingly, the motions for summary judgment on KSW's unjust enrichment claim are denied.

C. <u>Breach of Fiduciary Duty</u>

To prevail on a claim for breach of fiduciary duty under New York law, a plaintiff must prove "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach." <u>Whitney v. Citibank, N.A.</u>, 782 F.2d 1106, 1115 (2d Cir. 1986). "A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." <u>Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.</u>, 785 F. Supp. 411, 426 (S.D.N.Y. 1992) (quoting <u>Mobil Oil Corp. v. Rubenfeld</u>, 339

N.Y.S.2d 623, 632 (N.Y.C. Civ. Ct. 1972)). However, New York law is "quite clear" that "a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." Compania Sud-Americana, 785 F. Supp. at 426 (quoting Oursler v. Women's Interart Ctr., Inc., 566 N.Y.S.2d 295, 297 (1st Dep't 1991)).

Again, the undisputed record reveals that the Association often negotiated terms with Local 638 that set the pattern for the union's agreements with the Independents. But the parties dispute whether the Association actually assumed a fiduciary duty to negotiate on the Independents' behalf. On this record, a reasonable jury could find that the Independents reposed their confidence in the Association, and that the Association enjoyed "superiority and influence" as a result. Compania Sud-Americana, 785 F. Supp. at 426. The parties also dispute whether the disparate shop steward provisions actually damaged KSW. These contested factual questions must be resolved at trial, and the motions for summary judgment on KSW's breach of fiduciary duty claim are denied.

IV.  Claims Against Association Board Members

The Association argues that all claims against its board members should be dismissed because KSW does not allege that any individual board member acted unlawfully. KSW failed to respond to the Association's arguments regarding individual liability in its brief or at oral argument. "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." Lipton v. Cnty. of Orange, N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Thus, Defendants' motion for summary judgment dismissing all claims against the Association's board members is granted.

CONCLUSION

For the foregoing reasons, KSW's motion for summary judgment is denied in its entirety. Defendants' motion for summary judgment is granted in part and denied in part. Specifically, Defendants' motion for summary judgment dismissing all claims against the Association's board members is granted. Further, Defendants' motion for summary judgment dismissing KSW's good faith and fair dealing and tortious interference with contract claims is granted. Defendants' motion is denied in all other respects.

The Clerk of the Court is directed to terminate the motions pending at ECF Nos. 10 and 14.

Dated: March 27, 2012
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

James F. Oliviero, Esq.
37-16 23rd Street
Long Island City, NY 11101
*Counsel for Plaintiff*

Peter D. Stergios, Esq.
Christina M. Schmid, Esq.
McCarter & English, LLP
245 Park Avenue
New York, NY 10167
*Counsel for Defendants*